# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| **CONRAD PREVOST, JR.,** ) | |
| ) | |
| Plaintiff, ) | **CIV. NO.: 08-cv-00110** |
| v. ) | |
| ) | |
| **ISLANDS MECHANICAL** ) | |
| **CONTRACTOR, INC.,** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OPINION

Finch, Senior Judge

THIS MATTER comes before the Court on a Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration ("Motion to Compel") filed by the Defendant Islands Mechanical Contractor, Inc. ("IMC"). Plaintiff Conrad Prevost, Jr., ("Prevost") opposes such Motion on the following grounds: (1) Prevost did not assent to the terms of the arbitration agreement; (2) the arbitration agreement is both procedurally and substantively unconscionable; and (3) Prevost did not knowingly and voluntarily waive his constitutional right to trial by jury.

**I.     Background**

Following a previous unsuccessful attempt to secure employment with IMC, Prevost was hired on February 14, 2008. (Complaint ¶¶ 4-8.)[1] Prevost alleges that when he was offered a Certified Structural Welder position, IMC presented him with a "stack" of documents and told him that he was required to sign the documents in order to be hired. (Affidavit of Conrad Prevost

---

[1] The Complaint states that Prevost was hired on Feburary 5, 2008, but IMC declares that he was hired on February 14, 2008. (Mot. to Compel Ex. B.) Plaintiff confirms this date in his opposition. (Opp. at 1.)

("Prevost Aff.") ¶ 7.) IMC contends that this "stack" consisted of ten pages, which included a five page Employment Agreement, a two-page Employment Application, a W-4 form, an I-9 form, and a New Hire form. (Affidavit of Jerry Rollins ("Rollins Aff.") ¶ 3.) Paragraph 3 of the Employment Agreement instructs the applicant to choose a rate of compensation by initialing that he will either submit employment disputes to arbitration, or will pursue disputes through the Virgin Islands courts.[2] (Motion to Compel, Ex. A at 1.) However, the different rates of pay corresponding to arbitration or litigation were left blank on Prevost's Agreement. (Prevost Aff. ¶ 8; Aff. of Kristen Turnage Moore ¶ 4.) Moreover, Prevost did not indicate his choice by initializing in the allotted space. (Prevost Aff. ¶ 8.) Prevost alleges that he asked supervisor Buddy Martin what Paragraph 3 meant and what his options were, and that Martin responded, "Don't worry about that part, we just need you to fill in the top part of the agreement." (Prevost Aff. ¶¶ 8-9.) Both Prevost and Henry Thomas, who was also filling out new hire paperwork at the same time, allege that they asked Martin what rate they were to be paid, and were told that there was only one rate, $25 per hour. (Prevost Aff. ¶ 13; Aff. of Henry Thomas ¶ 7.) Martin, however, contends that Prevost did not ask him any questions about any of the new hire documents. (Aff. of Buddy Frank Martin ("Martin Aff.") ¶¶ 4-6.) Jerry Rollins remembers being questioned by Prevost about the Agreement, but alleges that he explained the options in Paragraph 3 to him, including the different rates of pay. (Rollins Aff. ¶ 5.) Furthermore, both

---

[2] Paragraph 3 of the Employment agreement provides as follows:

> 3. **Compensation.** During the period of employment, the Employer agrees to compensate the Employee for services rendered under this Agreement as follows:
> Employee shall initial one of the following:
> \_\_\_\_\_ I elect to resolve disputes with Employer by arbitration in accordance with Paragraph 8 of this Agreement, and agree to accept $\_\_\_\_\_ per hour as my initial, normal rate of compensation.
> \_\_\_\_\_ I elect to resolve disputes with Employer through the Virgin Islands courts in accordance with Paragraph 9, and agree to accept $\_\_\_\_\_ per hour as my initial, normal rate of compensation.
> **NOTE: If you fail to initial either of the above provisions and you sign this agreement, then you will be deemed to have elected to resolve disputes by arbitration as set forth above.**

Rollins and Martin aver that they did not tell Prevost that he would not be hired unless he signed the Employment Agreement. (Martin Aff. ¶ 7; Rollins Aff. ¶ 8.)

The differences between the recollections of Prevost and IMC do not end there. Prevost recalls being pressed for time to complete his paperwork, alleging that he had only ten to fifteen minutes to review and sign the documents. (Prevost Aff. ¶¶ 10, 11.) He states that he did not have the opportunity to take the documents home nor to consult with an attorney before signing. (*Id.* at ¶ 10.) Rollins, on the other hand, claims that he told Prevost he could take as much time as he needed to fill out the documents. (Rollins Aff. ¶ 4.) Rollins and Martin further claim that Prevost did not ask to take the documents home, but that if he had, he would have been allowed to take the documents home or to consult with an attorney. (Martin Aff. ¶ 8; Rollins Aff. ¶ 9.) Finally, Prevost alleges that he never signed the Employment Agreement, and that he did not write the printed name that appears in the signature line of the Agreement. (Prevost Aff. ¶ 16.) IMC contends that Prevost did write his name on the signature line himself, and insists that the name appearing on the Employment Agreement matches that written on other documents filled out by Prevost. (Defendant's Reply at 3-4.)

**II.      Discussion**

The enactment of the Federal Arbitration Act ("FAA") established a strong federal policy in favor of the resolution of disputes through arbitration. *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 263 (3d Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, "federal law presumptively favors the enforcement of arbitration agreements." *Id.* However, this presumption in favor of arbitration "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."

3

*Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Accordingly, a valid arbitration agreement must be found before parties can be compelled to arbitrate.

### A. Standard of Review

A motion to compel arbitration calls for a two-step inquiry into whether (1) a valid agreement to arbitrate exists and (2) the present dispute falls within the scope of the arbitration agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (citing *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990). The first step actually consists of two parts, as "[i]n conducting this inquiry the district court decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid." *Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997). Courts use a summary judgment standard, compelling arbitration only where there is "no genuine issue of fact concerning the formation of the agreement" to arbitrate. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) (disapproved of on other grounds by *Zosky v. Boyer*, 856 F.2d 554, 557 (3d Cir. 1988) and superseded on other grounds by *Stedor Enterprises, Ltd. v. Armtex, Inc.*, 947 F.2d 727, 729 n.1 (4th Cir. 1991)). The party who opposes the motion to compel receives "the benefit of all reasonable doubts and inferences that may arise." *Par-Knit Mills*, 636 F.2d at 54. However, the opposing party must establish more than a "mere existence of a scintilla of evidence" in support of its position. *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l, Inc.*, 51 V.I. 1116, 1120 (D.V.I. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). If a genuine

issue of fact is present, a trial must be held to determine whether an arbitration agreement exists. 9 U.S.C. § 4.[3]

### 1. Existence of an arbitration agreement

#### i. Assent

Prevost asserts that there is no arbitration agreement because he did not assent to the terms providing for arbitration. In support of that contention, Prevost argues that (1) he did not indicate his agreement to arbitrate by signing the Employment Agreement or initialing either option in Paragraph 3 of the Employment Agreement; and (2) he did not know what the terms pertaining to arbitration were because the rates of pay for both options were left blank and IMC failed to provide Prevost with information about Paragraph 3 when he made an inquiry. (Pl.'s Opp. at 9-12.) These allegations are supported by Prevost's own signed affidavit as well as that of his witness, Henry Thomas. (*See supra*, Background.) IMC refutes the allegations with its own affidavits from Jerry Rollins and Buddy Frank Martin, which directly contradict the statements in Prevost's and Thomas' affidavits. (*Id.*) In sum, IMC's affidavits allege that Prevost did ask about Paragraph 3 and his rate of pay; was offered a complete explanation about the difference between choosing arbitration or litigation and pay rates that corresponded to each

---

[3]Section 4 provides:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4.

choice; and chose to settle his disputes through arbitration in order to receive a pay rate of $25 per hour. (*Id.*) IMC further contends that Prevost was the one who wrote "Conrad Prevost" in the signature line on the Employment Agreement. (Reply at 3-4.)

The Court first addresses Prevost's argument that his failure to sign the Employment Agreement or to initial one of the options in Paragraph 3 demonstrates that he did not agree to arbitrate or creates a question of fact meriting a trial.

In determining an agreement's validity, courts "must generally look to the relevant state law on the formation of contracts. . . ." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Under Virgin Islands law, the essential prerequisites for the creation of a valid contract are a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Virgin Islands Water & Power Authority v. General Electric International, Inc.*, 51 V.I. 1116, 1121 (D.V.I. 2009) (citing The Restatement (Second) of Contracts § 17); *see also Univ. of V.I. v. Petersen-Springer*, 232 F. Supp. 2d 462, 469 (D.V.I. 2002) (same). The Restatement (Second) of Contracts states that "[m]anifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance." Restatement (Second) of Contracts § 18. Assent to an agreement may be manifested by written or spoken words or by the conduct of the parties. *Id*. § 19. "As a general rule, signatures are not required for a binding contract unless such signing is expressly required by law or by the intent of the parties." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 584 (3d Cir. 2009) (quotations omitted); *see also Marino v. Dillard's Inc.*, 413 F.3d 530, 532 (5th Cir. 2005) (holding that, under the Federal Arbitration Act, arbitration agreements need only be written, not signed). In this case, the "intent" of the parties indicates that in order to form an agreement to arbitrate, the employee

must either initial the arbitration provision, or, failing that, sign the Employment Agreement.[4] Thus, in light of Prevost's failure to initial the arbitration provision, it appears that Prevost's denial that he printed his name on the Agreement creates a question of fact meriting a trial.[5] However, IMC has proffered evidence that Prevost confirmed in his employment application ("Employment Application") that he had signed the Employment Agreement, a condition precedent to employment with IMC. The Employment Application contains the following provision:

> If you wish to be considered for employment with IMC **a signed copy of the Employment Agreement must accompany this application**. The Employment Agreement affects your legal rights. You should familiarize yourself with the agreement before signing and you may wish to seek legal advice. You may take the agreement with you to review but if you wish to continue the application process you must return a signed copy of the agreement with this application.

(Supp. Reply, Ex. 1) (emphasis added.)

Following this provision there is a sentence which reads: Does a signed copy of the Employment Agreement accompany this application? (*Id.*) The reply "yes" is checked off. Prevost's signature appears at the bottom of the document, which is dated February 10, 2008, the same date that appears on the Employment Agreement. The Court agrees with IMC that Prevost's signature on the Employment Application confirms that Prevost printed his name or authorized it to be printed on the Employment Agreement. Moreover, the fact that Prevost was required to sign the Agreement as a condition precedent to employment, in conjunction with the fact that Prevost was indeed employed by IMC, also constitutes evidence that Prevost signed the

---

[4] Specifically, the note to Paragraph 3 states: "If **you fail to initial** either of the above provisions **and** you **sign this agreement**, then you will be deemed to have elected to resolve disputes by arbitration as set forth above." (Mot. to Compel, Ex. B-1) (emphasis added.)
[5] The fact that Prevost did not initial either option of the arbitration provision is not dispositive, since the note to Paragraph 3 of the Agreement provides that the employee agrees to arbitrate by default should he fail to initial either option.

Agreement. *See Soto v. F & M MAFCO*, Inc., 2010 WL 2384582, at *4 (D.V.I. June 8, 2010 (the fact that agreeing to arbitrate was a condition precedent to employment was a factor showing that employee had assented to arbitration) (citing Restatement (Second) of Contracts § 36(2)). Therefore, Prevost's argument that he did not assent to arbitrate because he did not write his name on the Employment Agreement must fail.

The Court next considers Prevost's argument that he did not assent to the terms of the arbitration agreement because he did not know the terms of the offer. The Restatement (Second) of Contracts provides that an offer cannot form the basis of an agreement unless "the terms of the contract are reasonably certain." Restatement (Second) of Contracts § 33 (1981). "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Id*. "If the essential terms are so uncertain that there is no basis for determining whether the agreement has been kept or broken, there is not an enforceable contract." *SDK Investments, Inc. v. Ott*, 1996 WL 69402, at *7 (E.D. Pa. Feb. 15, 1996) (citations omitted). In this case, the missing terms were the rates of pay Prevost would receive if he chose to arbitrate or declined to do so. As the four corners of this Agreement establish, the terms relating to the differing pay rates in Paragraph 3 were left blank and thus it is uncertain as to whether the agreement by IMC to pay Prevost a different rate to arbitrate has been kept or broken.

However, the parties aver that there was a discussion about the terms that took place contemporaneously with the signing of the agreement. Without deciding which parties' account is correct, the Court must consider whether the parties' statements are admissible in construing Paragraph 3 because "a writing intended as the entire understanding of the parties is . . . subject to the parol evidence rule which precludes consideration of extrinsic evidence of prior or

8

contemporaneous agreements extending or altering the authority granted in a writing." *Phillips v. Andrews*, 332 F. Supp. 2d 797, 803 (D.V.I. App. 2004) (citations omitted).

At the outset, the Court notes that the Employment Agreement contains an integration clause that provides as follows:

> 11. **Complete Agreement.** This Agreement constitutes the complete agreement between the parties and incorporates all prior discussions, agreements and representations made in regard to matters set forth here. This Agreement may not be amended, modified or changed except by a writing signed by the party to be charged by the amendment, change or modification.

(Motion to Compel, Ex. A at 5.)

As the appellate division of this Court has held, "express language within an agreement that specifies the intent of the parties to limit their terms to the agreement must ultimately be given effect." *Phillips,* 332 F. Supp. 2d at 804 (citing Restatement (Second) of Contracts § 212, cmt. b (1981) ("the words of an integrated agreement remain the most important evidence of intention")); *see also LPP Mortg., Ltd. v. Brammer, Chasen, & O'Connell*, 2008 WL 5280912, at *3 (D.V.I. 2008) ("where the language of a contract is clear and unambiguous, it must be given its plain meaning" (citing *Tamarind Resort Assocs. v. Gov't of Virgin Islands*, 138 F.3d 107, 110 (3d Cir.1998)). However, extrinsic evidence may be introduced to interpret an ambiguous term in a contract, despite the presence of an integration clause. *Prior v. Innovative Commc'ns Corp.*, 207 Fed. Appx. 158, 162 (3d Cir. 2006) (citing *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 233 (3d Cir. 2001) ("Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible . . . to establish the meaning of ambiguous terms in the writing, whether or not the writing is integrated.")). The language of a contract is ambiguous when a term or provision "is capable of more

than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *United States v. Dunn*, 557 F.3d 1165, 1172 (10th Cir. 2009) (citations omitted); *see also Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir. 1991) ("Ambiguity exists only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations."). Evidence of prior or contemporaneous agreements made with the adoption of the agreement are also admissible to establish "illegality, fraud, duress, mistake, lack of consideration, or other invalidating cause." Restatement (Second) § 214. *See also Ingraham v. Geico Ins. Co.*, 2009 WL 793046, at *15 (W.D. Pa. 2009) ("Parol evidence may be introduced to vary a writing where a party avers that a term was omitted because of fraud, accident, or mistake or where a term in the contract is ambiguous.").

In this case, the arbitration provision is ambiguous because it is missing a term, *i.e.*, the rates of pay associated with either a decision to arbitrate disputes or to seek relief in the courts. Moreover, IMC asserts that the term is missing due to a mistake on its part, while Prevost suggests that IMC misrepresented the meaning of the arbitration provision. (Mot. to Compel at 2; Opp. at 11.) The Court finds that the admission of the contemporaneous statements made by the parties is warranted both to disambiguate the missing term, and to determine whether there was a mistake or fraud in the representation of those terms. The Court also finds that the statements of the parties are contradictory, and thus there is a question of material fact concerning the missing term. Accordingly, the Court will not decide on the parties' motions as to whether an agreement to arbitrate exists and will instead order a separate trial on the issue.

### 2. Validity of the arbitration agreement

Prevost, in addition to arguing that he did not agree to arbitrate, also opposes arbitration on the grounds that the arbitration agreement is invalid. In particular, Prevost argues that the Agreement is unconscionable and was not obtained by a knowing and voluntary waiver. However, the Court will defer ruling on these issues until, and if, the existence of the arbitration agreement is confirmed.

### III. Conclusion

The Court finds that there are factual disputes precluding a ruling on the motion to compel arbitration and orders a separate trial on the existence of an arbitration agreement. An appropriate Order in this matter will be entered in conjunction with this Memorandum Opinion.

ENTER:

Dated: July 13, 2010  _____/s/_____
HONORABLE RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE