DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

_____
                                       )
**CONRAD PREVOST, JR.**                )
                                       )
      **Plaintiff,**         )
                                       )
      v.                     )    Civil Action No. 2008-110
                                       )
**ISLANDS MECHANICAL**                 )
**CONTRACTOR, INC.,**                  )
                                       )
      **Defendant.**         )
_____)

**Attorneys:**
**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiff*

**Andrew C. Simpson, Esq.,**
**Rachelle M. Shocklee, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendant*

## MEMORANDUM OPINION AND ORDER

**Lewis, District Judge**

      THIS MATTER comes before the Court on Defendant's "Motion in Limine to Exclude Improper References at Trial," filed on September 7, 2011. (Dkt. No. 53). In that Motion, Defendant seeks an Order from the Court barring Plaintiff from using "any language in opening statements, closing arguments or through testimony of witnesses" that (1) "relate[s] to Plaintiff's underlying claims" or (2) "refers to 'locals' or prejudice against 'locals' or alleged

discrimination against 'locals' by Defendant." (*Id.* at 3).[1]  For the reasons discussed below, the Court will grant in part and deny in part Defendant's Motion.

## I.  BACKGROUND

Plaintiff Conrad Prevost, Jr. ("Plaintiff" or "Prevost") filed a Complaint on December 16, 2008 against Defendant Islands Mechanical Contractor, Inc. ("Defendant" or "IMC"), alleging violations of Title VII of the Civil Rights Act of 1964 (Count I), violations of the Civil Rights Act of the Virgin Islands (Count II), intentional or negligent infliction of emotional distress (Count III), and punitive damages (Count IV).[2]  (Dkt. No. 1 at 1, 8–9).  On February 18, 2009, Defendant filed its Answer (Dkt. No. 9) as well as a "Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration."  (Dkt. No. 10).  In that Motion, Defendant argued that Plaintiff had signed an Employment Agreement containing a binding arbitration provision, pursuant to which Plaintiff agreed to arbitrate all claims arising out of Plaintiff's employment with Defendant.  (*Id.* at 3).  Therefore, Defendant argued that "this matter must be referred for arbitration pursuant to the Plaintiff's employment contract and the matter stayed until completion of all arbitration proceedings."  (*Id.*).  In opposition, Plaintiff argued, among other things, that: (1) no arbitration agreement existed, because the evidence shows that Plaintiff did not assent to the terms of the agreement; (2) any such arbitration agreement is unconscionable and

---

[1] Defendant filed a substantially similar Motion *in Limine* in *Fitz v. Islands Mechanical Contractor, Inc.* (1:08-cv-060, Dkt. No. 56).  These cases had previously been consolidated for purposes of discovery on the issue of the arbitrability of Plaintiffs' underlying claims.  In a Memorandum Opinion and Order dated March 1, 2013, the Court granted Defendant's "Unopposed Motion to Consolidate" the two cases for purposes of the upcoming trial on the arbitrability issue. (1:08-cv-060, Dkt. No. 81; 1:08-cv-110, Dkt. No. 84).

[2] "It is well settled that a claim for punitive damages is not a distinct cause of action." *Galloway v. Islands Mechanical Contractor, Inc.*, Civ. No. 2008–071, 2012 WL 3984891 at *19 (D.V.I. Sept. 11, 2012); *see also, e.g.*, *McDonald v. Davis*, 2009 WL 580456, at *16 (D.V.I. Mar. 5, 2009) (collecting cases).  However, Plaintiffs will be allowed to seek punitive damages at trial with regard to those claims for which the law and evidence support such an award.

unenforceable; and (3) the agreement was not a knowing and voluntary waiver of a trial by jury. (Dkt. No. 12 at 9–23). Plaintiff further declared that he did not sign the Employment Agreement. (*Id.*).

The Court ruled on Defendant's Motion to Compel Arbitration in a Memorandum Opinion dated July 13, 2010. (Dkt No. 17). In that Opinion, the Court summarized the relevant factual background:

> Following a previous unsuccessful attempt to secure employment with IMC, Prevost was hired on February 14, 2008. (Complaint ¶¶ 4–8.) Prevost alleges that when he was offered a Certified Structural Welder position, IMC presented him with a "stack" of documents and told him that he was required to sign the documents in order to be hired. (Affidavit of Conrad Prevost ("Prevost Aff.") ¶ 7.) IMC contends that this "stack" consisted of ten pages, which included a five page Employment Agreement, a two-page Employment Application, a W-4 form, an I-9 form, and a New Hire form. (Affidavit of Jerry Rollins ("Rollins Aff.") ¶ 3.) Paragraph 3 of the Employment Agreement instructs the applicant to choose a rate of compensation by initialing that he will either submit employment disputes to arbitration, or will pursue disputes through the Virgin Islands courts. (Motion to Compel, Ex. A at 1.) However, the different rates of pay corresponding to arbitration or litigation were left blank on Prevost's Agreement. (Prevost Aff. ¶ 8; Aff. of Kristen Turnage Moore ¶ 4.) Moreover, Prevost did not indicate his choice by initialing in the allotted space. (Prevost Aff. ¶ 8.) Prevost alleges that he asked supervisor Buddy Martin what Paragraph 3 meant and what his options were, and that Martin responded, "Don't worry about that part, we just need you to fill in the top part of the agreement." (Prevost Aff. ¶¶ 8-9.) Both Prevost and Henry Thomas, who was also filling out new hire paperwork at the same time, allege that they asked Martin what rate they were to be paid, and were told that there was only one rate, $25 per hour. (Prevost Aff. ¶ 13; Aff. of Henry Thomas ¶ 7.) Martin, however, contends that Prevost did not ask him any questions about any of the new hire documents. (Aff. of Buddy Frank Martin ("Martin Aff.") ¶¶ 4-6.) Jerry Rollins remembers being questioned by Prevost about the Agreement, but alleges that he explained the options in Paragraph 3 to him, including the different rates of pay. (Rollins Aff. ¶ 5.) Furthermore, both Rollins and Martin aver that they did not tell Prevost that he would not be hired unless he signed the Employment Agreement. (Martin Aff. ¶ 7; Rollins Aff. ¶ 8.)
> The differences between the recollections of Prevost and IMC do not end there. Prevost recalls being pressed for time to complete his paperwork, alleging that he had only ten to fifteen minutes to review and sign the documents. (Prevost Aff. ¶¶ 10, 11.) He states that he did not have the opportunity to take the documents home nor to consult with an attorney before signing. (Id. at ¶ 10.) Rollins, on the other hand, claims that he told Prevost he could take as much time

> as he needed to fill out the documents. (Rollins Aff. ¶ 4.) Rollins and Martin further claim that Prevost did not ask to take the documents home, but that if he had, he would have been allowed to take the documents home or to consult with an attorney. (Martin Aff. ¶ 8; Rollins Aff. ¶ 9.) Finally, Prevost alleges that he never signed the Employment Agreement, and that he did not write the printed name that appears in the signature line of the Agreement. (Prevost Aff. ¶ 16.) IMC contends that Prevost did write his name on the signature line himself, and insists that the name appearing on the Employment Agreement matches that written on other documents filled out by Prevost. (Defendant's Reply at 3–4.)

(Dkt. No. 17 at 1–3) (footnotes omitted).

The Court found that "the arbitration provision is ambiguous because it is missing a term, *i.e.*, the rates of pay associated with either a decision to arbitrate disputes or to seek relief in the courts." (*Id.* at 10). The Court further found that the admission of contemporaneous statements made by the parties was warranted to determine the missing term, and to determine whether there was a mistake or fraud in the representation of those terms. (*Id.*). After finding that the contemporaneous statements of the parties were contradictory, the Court concluded that there was an issue of material fact regarding the missing terms. (*Id.*). Accordingly, the Court ordered a trial on the issue of the existence of an arbitration agreement. (*Id.* at 10–11).[3]

Following the issuance of the Court's Memorandum Opinion and Order, the parties filed a stipulated joint motion to consolidate this case for purposes of discovery on the issue of arbitrability with *Fitz v. Islands Mechanical Contractor, Inc.* (Case No. 08-cv-060), which involves similar facts and issues of law. (*See* 08-cv-060, Dkt. No. 17). Subsequently, in response to Defendant's "Unopposed Motion to Consolidate" (Dkt. No. 81), the Court entered an Order on March 1, 2013 consolidating the two cases for purposes of the trial on arbitrability. (08-cv-060, Dkt. No. 81; 08-cv-110, Dkt. No. 84). The trial of the consolidated matter is

---

[3] With regard to Plaintiff's argument that the arbitration agreement is unconscionable and was not obtained by a knowing and voluntary waiver, the Court "defer[red] ruling on these issues until, and if, the existence of the arbitration agreement is confirmed." (*Id.* at 11).

scheduled to begin on April 2, 2013. *Id.* at 5.

## II. DISCUSSION

In the instant Motion *in Limine*, Defendant requests an Order from the Court that "Plaintiff and his counsel shall not use any language in opening statements, closing arguments or through testimony of witnesses" that: (1) "relate[s] to Plaintiff's underlying claims [of] violations of Title VII, violations of the Civil Rights Act of the Virgin Islands, intentional or negligent infliction of emotional distress and punitive damages," or (2) "refers to 'locals' or prejudice against 'locals' or alleged discrimination against 'locals' by Defendant." (Dkt. No. 53 at 3). These two requests are examined in turn.

### A. References to Plaintiff's Underlying Claims

In its Motion *in Limine*, Defendant argues that the issue in the upcoming trial "is solely related to whether the Plaintiff entered into an agreement to arbitrate disputes with Defendant." (Dkt. No. 53 at 2).[4] In Defendant's view, "[t]his is a contractual issue only and the trial testimony and arguments should be limited to the contractual claims and the factual events surrounding Plaintiff's execution of the arbitration agreement." (*Id.*). Defendant argues that if Plaintiff is allowed to make reference to the underlying discrimination claims, "those references will appeal to the juror's [sic] emotions and they will be unable to fairly determine the actual issue to be tried, which is whether the Plaintiff is bound by the employment contract to arbitrate his disputes against the Defendant." (*Id.* at 3). With regard to the issue to be tried, Defendant further argues that "[i]ssues of race and local bias are unnecessary for this determination." (Dkt. No. 69 at 2–3).

---

[4] Because the Motion *in Limine* was filed prior to the consolidation of the *Fitz* and *Prevost* matters, the arguments advanced by Defendant and addressed herein relate to the *Prevost* portion of the consolidated case.

In his Opposition brief, Plaintiff argues that the requirement to sign the arbitration agreement was discriminatory and violative of public policy in that "the lion's share of those employees forced to sign an arbitration agreement with IMC [were not white stateside workers, but instead] were Black West Indian employees . . . who were induced into signing the agreement with the promise of $25 per hour, which IMC never intended to keep them [sic]." (Dkt. No. 73 at 3). Plaintiff's theory is that Defendant induced the black West Indian employees—whom Defendant was forced to hire in response to picketing and protests—to sign arbitration agreements in order to facilitate their ultimate firing, and then "fabricated reasons to demote them, reduce their pay, unfairly discipline them, and ultimately terminate them wrongfully on the basis of their race, national origin, and color." (*Id.* at 2–3).

Defendant asks the Court to prevent Plaintiff and his counsel from using "any language" during the arbitrability trial that "relate[s] to Plaintiffs' underlying claims . . . ." (*See* Dkt. No. 53 at 3). As a preliminary matter, the extraordinary breadth of this proposed preclusion of argument and evidence militates against its acceptability. As the Sixth Circuit has noted: "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). The Court deems it prudent to heed such advice, believing that this case does not present the type of circumstance where such a broad preclusion would be warranted or advisable.

The Court agrees with Defendant that the issue at trial—whether Plaintiff entered into an agreement to arbitrate disputes with Defendant—presents a contractual issue, and that the testimony and arguments "should be limited to the contractual claims and the factual events surrounding Plaintiff's execution of the arbitration agreement." (*See* Dkt. No. 53 at 2).

6

However, allegedly discriminatory motives and actions are not necessarily irrelevant to the factual events surrounding whether Plaintiff agreed to arbitrate his employment claims or whether Defendant made misrepresentations with respect to the arbitration provision, as Plaintiff claims.

In its previous Memorandum Opinion dated July 13, 2010 (Dkt. No. 17), the Court determined that a threshold issue at trial is the *existence* of an agreement to arbitrate between Prevost and Defendant.  (*See id.* at 10–11).  The Court reasoned that:  (1) the arbitration provision is ambiguous because it is missing essential terms (namely, "the rates of pay Prevost would receive if he chose to arbitrate or declined to do so"); (2) the admission of contemporaneous statements made by the parties is warranted to determine the missing terms, and to determine whether there was a mistake or fraud in the representation of those terms; and (3) the statements of the parties are contradictory, and thus there is an issue of material fact concerning the missing terms. (Dkt. No. 17 at 8, 10).  Summarizing the parties' contradictory positions regarding the missing terms and the contemporaneous statements allegedly made with respect to those terms, the Court noted that "IMC asserts that the term is missing due to a mistake on its part, while Prevost suggests that IMC misrepresented the meaning of the arbitration provision." (*Id.* at 10).

Therefore, a central factual issue in this arbitrability trial involves the specifics of the conversation between Defendant and Plaintiff at the time that Plaintiff was presented with the Employment Agreement.  The two parties have very different accounts of this conversation.  Defendant maintains that it fully explained the meaning of the arbitration provision to Plaintiff, including an explanation of the different rates of pay, and that Plaintiff had the option to choose to either arbitrate or litigate his disputes. (Rollins Aff. ¶ 5).  On the other hand, Plaintiff alleges

that he was told that there was only one pay rate—$25.00 per hour—and that when he asked about the meaning of the arbitration provision and what his options were, he was told, "[d]on't worry about that part, we just need you to fill in the top part of the agreement."  (Prevost Aff. ¶¶ 8–9, 13).  Plaintiff further alleges that he had only ten to fifteen minutes to review and sign the documents, and that he did not have the opportunity to consult with an attorney or take the documents home before signing.  (*Id.* at ¶ 10).  By contrast, Defendant claims that Plaintiff was told that he could take as much time as he needed, and that he would have been allowed to take the documents home or consult with an attorney if he had asked to do so.  (Rollins Aff. ¶¶ 4, 9).

     Given these competing factual narratives asserted by Plaintiff and Defendant, the jury will have to evaluate the credibility of the witnesses to determine which account it believes. Evidence of Defendant's allegedly discriminatory conduct—albeit circumstantial—would be relevant to the issue of whether Defendant had a motive to lie to Plaintiff regarding the arbitration provision, thus bearing on Defendant's credibility for purposes of determining whether Defendant in fact misrepresented the meaning of the arbitration provision.  *See* Fed. R. Evid. 401(a) ("Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence . . . ."); *United States v. Knight*, Crim. No. 09–005, 2011 WL 703924 at *10 (D.V.I. Feb. 18, 2011) (noting that "the credibility of a witness is a paramount concern for the fact-finder" in a "he said, she said" case); *see also Palmer v. Evenheat Kiln, Inc.*, Civ. No. 10–1163, 2012 WL 2149816 at *1 (W.D. Pa. June 13, 2012) (noting that evidence that a party had a motive to fabricate is relevant to that party's credibility).

     The relevance of this evidence is further amplified by Plaintiff's overarching theory, which appears to be that Defendant:  never intended to hire black West Indian workers; only reluctantly agreed to hire them due to picketing and protests; imposed arbitration provisions

8

disproportionately on black West Indian workers to be able to demote and fire them with relative impunity; lied to Plaintiff to convince him to agree to arbitrate his disputes; and then engaged in discriminatory adverse employment actions against Plaintiff, including his ultimate termination. (Dkt. No. 73 at 2–3; Dkt. No. 1 at 1–7).

Apparently recognizing the relevance of such evidence, Defendant focuses instead on the contention that "references to discrimination on the basis of race or national origin . . . will appeal to the juror's [sic] emotions and they will be unable to fairly determine the actual issue to be tried," (Dkt. No. 53 at 3), thus invoking Federal Rule of Evidence 403. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). However, the exclusion of all evidence of the allegedly discriminatory employment acts would appear to prevent Plaintiff from presenting core evidence on an integral component of his theory of the arbitrability case. If Plaintiff was barred from making any reference to the underlying claims, he would be prevented from fully articulating his theory, including *why* Defendant would have lied to Plaintiff regarding the arbitration provision. *See, e.g.*, *Evenheat Kiln*, 2012 WL 2149816 at *1; *Knight*, 2011 WL 703924 at *10.

Accordingly, the Court finds that, as a general matter, the probative value of evidence regarding Plaintiffs' underlying discrimination claims is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence, so as to warrant the imposition of a *blanket* ban on any references to Plaintiff's underlying claims. *See Sperberg*, 519 F.2d at 712; *see also United States v. Clarke*, 24 F.3d 257, 265 (D.C. Cir. 1994) (observing that the D.C. Circuit "has

9

previously noted that the language of Rule 403 'tilts, as do the rules as a whole, toward the admission of evidence in close cases'") (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)).

Defendant's first request regarding the exclusion of "any" references to Plaintiff's underlying claims will therefore be denied. Plaintiff will not be preemptively barred from presenting relevant argument and evidence of allegedly discriminatory employment acts that, if true, would provide circumstantial evidence supporting his theory that Defendant misrepresented the meaning of the arbitration provision. *See, e.g.*, *Sperberg*, 519 F.2d at 712.

While the Court has rejected Defendant's request to exclude any reference relating to Plaintiff's underlying claims, the Court's ruling in this regard is not intended to grant Plaintiff license to convert the arbitrability trial into a full-scale trial on the merits of the underlying discrimination claims.[5] In view of questions that might arise regarding, *inter alia*, the substance, scope, and manner of presentation of evidence and argument, the Court will entertain objections at trial to the admissibility of such evidence, including as to its relevance and the possible exclusion of relevant evidence in accordance with Rule 403 of the Federal Rules of Evidence.

**B.      Language that Refers to "Locals" or Prejudice or Discrimination Against "Locals"**

In the second request in its Motion *in Limine*, Defendant asks the Court to order that "Plaintiff and his counsel shall not use any language in opening statements, closing arguments or through testimony of witnesses that refers to 'locals' or prejudice against 'locals' or alleged discrimination against 'locals' by Defendant." (Dkt. No. 53 at 3). Defendant argues that such language is an attempt "to induce the bias or local prejudices of the jury," and that "those

---

[5] Additionally, the Court's ruling is limited to references to Plaintiff's underlying claims of *discrimination*. The parties have not briefed, and thus the Court has not considered, the potential relevance of Plaintiff's other underlying claims, such as claims for intentional or negligent infliction of emotional distress and claims for breach of duty of good faith and fair dealing.

10

references will appeal to the juror's [sic] emotions and they will be unable to fairly determine the actual issue to be tried, which is whether the Plaintiff is bound by the employment contract to arbitrate his disputes against the Defendant." (*Id.* at 2–3). Defendant relies on *Wallace v. Kmart Corporation*, 821 F. Supp. 2d 763 (D.V.I. 2011), pointing the Court to the statement in *Wallace* that "[a] judge has the obligation to insure that the issues are presented to the jury without any unwarranted appeals to the jurors' emotions." (Dkt. No. 53 at 2–3) (quoting *Wallace*, 821 F. Supp. 2d at 769).

The *Wallace* opinion cited by Defendant also references the underlying trial at issue in *Vitalis v. Sun Constructors, Inc.*, 481 F. App'x 718 (3d Cir. 2012). On appeal in *Vitalis*, the plaintiff argued, among other things, that the district court had improperly prevented him from arguing that the employer discriminated against "locals" or "local Virgin Islanders." *Id.* at 721. The Third Circuit agreed with the trial judge in holding that "locals" or "local residents of St. Croix" were not protected groups under Title VII based on race or national origin, noting that "[n]o evidence demonstrated that all of the local residents of St. Croix share a 'unique historical, political and/or social circumstance[ ].'" *Id.* (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F. 3d 760, 762 n.3 (3d Cir. 2004)). The Third Circuit concluded that "Vitalis's argument that the District Court should treat all 'locals' as black West Indians and all 'state-siders' as whites is not supported by the record." *Id.*

In response to Defendant's instant Motion, Plaintiff argues, among other things, that "[t]he Virgin Islands is a former slave colony and the vast majority of its local residents are Black West Indian descend[a]nts of African Slaves," and that "[c]learly the term 'local' in the Virgin Islands particularly in an employment setting being used by [] White stateside owners or managers of a company connotes the indigenous Black West Indian persons on St. Croix." (Dkt.

No. 73 at 9–10). Plaintiff cites the deposition of one of Defendant's representatives, who referred to a black employee as "a local kid," and notes that Defendant, through its attorney, "repeatedly used the words 'local workers' when referring to Black West Indians living on St. Croix in its response to the DOL's investigation." (*Id.* at 10–11). Additionally, Plaintiff argues that Defendant's Motion *in Limine* on this issue lacks specificity and "is devoid of any discussion of facts or evidence relative to the law." (*Id.* at 14).

*Vitalis* stands for the proposition that "local residents of St. Croix do not constitute a protected class based on their national origin." *See Vitalis*, 481 F. App'x at 721. Accordingly, the Court will not permit evidence or argument suggesting that "locals" constitute a protected class, including through references to prejudice or discrimination against "locals." *See id.* To the extent that Defendant's Motion seeks to exclude such evidence or argument, it will be granted.

However, the Court declines Defendant's implicit invitation to read *Vitalis* as supporting a standing prohibition on the use of the word "locals," without reference to the context in which the issue arises and the particular facts and circumstances of each case. *Vitalis* rejected the argument that the district court in that case should treat all "locals" as black West Indians and all "state-siders" as whites, because that argument was "not supported by the record." *Id.* at 721. In discussing the issue, the Third Circuit in *Vitalis* focused on the particular evidence in the record *in that case*. *See id.* at 721–22. The Third Circuit did not make any statement suggesting that the record evidence *in a different case* might not support, for example, the assertion that an employer used the term "locals" as shorthand for "black West Indians." *See id.*

Moreover, the Court finds that Defendant's request is overly broad, in that it asks the Court to order that Plaintiff "shall not use any language in opening statements, closing arguments

or through testimony of witnesses that refers to 'locals.'" (Dkt. No. 53 at 3). Prior to trial, the Court will not preemptively place a blanket prohibition—totally devoid of context—on the use of the term "locals." *See Ebenhoech v. Koppers Indus., Inc*., 239 F. Supp. 2d 455, 461 (D.N.J. 2002) (noting that rulings on motions *in limine* "should not be made prematurely if the context of trial would provide clarity"); *Sperling v. Hoffmann-La Roche, Inc.*, 924 F. Supp. 1396, 1413 (D.N.J. 1996) ("[I]t is difficult to rule on the admissibility of pieces of evidence prior to trial. It is often useful to wait to see how the trial unfolds."). Therefore, to the extent that Defendant's Motion asks the Court to enter an Order prohibiting Plaintiffs from making any mention of the word "locals," the Motion will be denied, with the caveat that objections will be entertained at trial.

    For the foregoing reasons, it is hereby

    **ORDERED** that Defendant's Motion *in Limine* is **GRANTED IN PART** and **DENIED IN PART**; and it is further

    **ORDERED** that Defendant's first request, regarding the exclusion of "any" references to Plaintiff's underlying claims, is **DENIED**, without prejudice to Defendant's right to raise specific objections during trial; and it is further

    **ORDERED** that as to Defendant's second request, it is **GRANTED** insofar as Plaintiff is prohibited from presenting evidence and argument suggesting that "locals" constitute a protected class, including through references to prejudice or discrimination against locals; and it is further

**ORDERED** that as to Defendant's second request, it is **DENIED** insofar as it seeks to prevent Plaintiff from using "any" language that refers to "locals," without prejudice to Defendant's right to raise specific objections during trial.

**SO ORDERED.**

Date:  March 15, 2013                              _____/s/_____
                                                   WILMA A. LEWIS
                                                   District Judge